**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles W. LEE, Jr. and Ray Metcalf,**
**Defendants-Appellants.**

**No. 18514.**

United States Court of Appeals,
Seventh Circuit.

June 10, 1971.

Rehearing Denied July 9, 1971.

Certiorari Denied Oct. 12, 1971.

See 92 S.Ct. 107.

Jack N. Van Stone, Marion J. Rice, Rice & Van Stone, Evansville, Ind., for appellants.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and CAMPBELL, Senior District Judge.*

* Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

STEVENS, Circuit Judge.

Two proprietors and two employees of a gambling enterprise in Evansville, Indiana, were convicted of violating the Travel Act.[1] The two entrepreneurs appealed, contending (1) that evidence was seized pursuant to a void search warrant, and (2) that the trial court erroneously failed to instruct the jury that knowledge of their employees' interstate travel was an essential element of the crime.[2] We reject both contentions.

## I.

The challenged warrant authorized a search of "the premises known as Ray's Lounge, which is a two-story red brick building located at 718–720 North Third Avenue. * * *" Probable cause for searching the premises thus described was established by the affidavit presented to the Commissioner. Appellants contend, however, that the evidence presented in support of their motion to suppress proved that the description was too broad because the location was in fact a multiple occupancy building.[3]

The building in question was owned by appellant Metcalf and his wife; it had three front entrances on North Third Avenue. The three entrances were separately numbered as 16, 18 and 20. A tenant operated a barbershop in No. 16, whereas Nos. 18 and 20 were under the control of defendants. The second story was only one-third the area of the first; it was located over No. 20 and housed the gambling operation.

During July, 1969, when F.B.I. agents surveilled and patronized the game, a tavern known as "Ray's Lounge" was operated in No. 18, and the first floor of No. 20 was being remodeled as an all-night pancake house. At that time access to the second floor was gained by entering the tavern, proceeding to the rear, and then climbing stairs at the back of No. 20. A few days before the raid, the pancake house opened, the door at the rear of No. 18 was locked, and apparently access thereafter was obtained directly through the first floor of No. 20. The apparent purpose of the change was to enable the tavern to comply with a 2:00 A.M. closing requirement without obstructing access to the principal business conducted on the premises.

Although appellants are correct insofar as they refer to the entire structure as a multiple occupancy building, the assertion is incorrect as applied to the premises described in the warrant, which was specifically limited to Nos. 18 and 20. The record indicates a single occupancy of the place to be searched and particularly described in the warrant.[4] Appellants' reliance on United States v. Hinton, 219 F.2d 324 (7th Cir. 1955) is therefore misplaced.[5] The fact that defendants conducted more than one business activity on the premises, particular-

---

1. 18 U.S.C. § 1952. The counts naming appellants also alleged violations of 18 U.S.C. § 2, the aiding and abetting statute.

2. Appellants also challenged the constitutionality of the statute and the sufficiency of the evidence. We find no merit in either of those contentions.

3. As a related argument they also contend that the agents improperly seized a safe and filing cabinet, items not specifically identified in the warrant. However, neither of these items, nor any of their contents, nor any evidence derived as a result of their seizure, was received at the trial. The evidence of guilt included the gambling paraphernalia which was properly described in the warrant

and the oral testimony of agents who had patronized the games on repeated occasions.

4. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV.

5. In that case the court held that evidence which failed to establish probable cause for the search of each residence in a multi-dwelling apartment building was not sufficient to warrant a search of the entire building. *Accord* United States v. Higgins, 428 F.2d 232, 234–235 (7th Cir. 1970).

ly since the businesses were interrelated, does not invalidate the warrant or the search. Cf., Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757.

### II.

■ The evidence showed that appellants' two co-defendants had been employed in the Evansville gambling operation for several years, that they resided in Kentucky, and that they regularly commuted to work in a car displaying Kentucky license plates. The jury could reasonably infer that appellants had knowledge of their employees' interstate travel.

■ Appellants argue, however, that the instructions did not require the jury to find such knowledge in order to return a guilty verdict. We disagree with this interpretation of the instructions. They clearly required the jury to find that appellants had knowledge of their co-defendants' interstate travel.[6] They did not require a finding of knowledge that the activity violated federal law, but such a finding is not an essential element of the crime. United States v. Miller, 379 F.2d 483, 486–488 (7th Cir. 1967) cert. denied 389 U.S. 930, 88 S.Ct.

291, 19 L.Ed.2d 281, see United States v. Roselli, 432 F.2d 879, 890–893 (9th Cir. 1970) cert. denied 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (discussing Twitchell v. United States, 313 F.2d 425 (9th Cir. 1963) on which appellants rely here).

### III.

Neither the Supreme Court's recent decision in Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493, nor our decision in Altobella v. United States, 442 F.2d 310 (7th Cir. 1971), raises any question about the validity of these convictions.

■ In Rewis the Court held that actual or foreseeable interstate travel by patrons of the gambling operation was not a sufficient basis for applying § 1952 to the illegal activity. There is, however, a clear distinction between travel by customers and travel by employees of an illegal business.[7] Whether that travel is merely commuting across a state line on a daily basis or involves a transcontinental journey to perform a specific illegal mission is, in our judgment, immaterial.

6. Instruction No. 9 read as follows:
   "The essential elements of the offenses charged in each Counts IV, V and VI of the indictment, each of which must be proved by the Government beyond a reasonable doubt as to a particular defendant named therein with regard to a particular count before you would be justified in finding such a defendant guilty as to such a count, are as follows:
   "1. That a defendant named in such counts, on or about the date mentioned, unlawfully, willfully and knowingly caused either Emory Sights or Raymond K. West, or both of them, to travel from Henderson County, Kentucky to Evansville, Indiana, in the Southern District of Indiana, with intent to carry on, or to facilitate the promotion, management or carrying on of a business enterprise involving gambling in the manner set out in the indictment.
   "2. That such business enterprise, if any, was contrary to the laws of the state of Indiana.

   "3. That after such interstate travel, if any, either Emory Sights or Raymond K. West, or both of them, unlawfully, willfully and knowingly did or attempted to do an act or acts facilitating the carrying on of such business enterprise, if any.
   "The defendants Charles W. Lee, Jr., and Ray Metcalf deny each of said elements as to each of said counts."

7. "Legislative history of the Act is limited, but does reveal that § 1952 was aimed primarily at organized crime and, more specifically, at persons who reside in one State while operating or managing illegal activities located in another." 91 S.Ct. at p. 1059. Although the quoted sentence specifically mentions only persons at the executive level of the illegal enterprise, we believe the scope of the legislative purpose reasonably encompasses employees with limited responsibilities as well.

We also consider *Altobella* plainly distinguishable. This record discloses continual interstate travel by employees of the illegal venture as well as substantial regular illegal activity "thereafter," factors not present in *Altobella*. Moreover, the isolated use of an instrumentality of interstate commerce in *Altobella* was caused by the victim, not by a member, of the unlawful enterprise. *Cf., Rewis supra.*

The judgment is affirmed.